IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNIVERSITY OF HAWAII PROFESSIONAL ASSEMBLY; | ) ) ) ) | Civil No. _____ |
| | ) | COMPLAINT FOR |
| | ) | DECLARATORY AND |
| Plaintiff, | ) | PROSPECTIVE INJUNCTIVE |
| | ) | RELIEF |
| vs. | ) ) | |
| DAVID Y. IGE, in his capacity as Governor of the State of Hawaiʻi; CURT OTAGURO, in his capacity as Comptroller of the State of Hawaiʻi; and DAVID LASSNER, in his capacity as President of the University of Hawaiʻi, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

GILL, ZUKERAN & SGAN
T. ANTHONY GILL 2391-0
WADE C. ZUKERAN 4319-0
DAVID A. SGAN 6643-0
1164 Bishop Street, Suite 801
Honolulu, Hawaiʻi 96813
Telephone: (808) 523-6777
Fax: (808) 523-7003
E-mail: tgill@gzsattorneys.com

Attorneys for Plaintiff UHPA

## COMPLAINT FOR DECLARATORY
## AND PROSPECTIVE INJUNCTIVE RELIEF

Plaintiff UNIVERSITY OF HAWAII PROFESSIONAL ASSEMBLY, by and through its attorneys,  GILL, ZUKERAN & SGAN, hereby brings this action for declaratory and injunctive relief against Defendants DAVID Y. IGE, as Governor of the State of Hawaiʻi, CURT OTAGURO, as Comptroller of the State of Hawaiʻi, and DAVID LASSNER, as President of the University of Hawaiʻi.

This is an action on behalf of University of Hawaiʻi faculty to declare Defendants' unilateral imposition of furloughs and salary reductions unconstitutional under Article I, Section 10 (the Contract Clause) of the United States Constitution.  Plaintiff also seeks injunctive relief to prevent violation of the United States Constitution and prevent irreparable injury to faculty.

Defendants will implement furloughs by mandating that faculty take unpaid leaves beginning January 1, 2021, and mandating reduction of faculty pay by 9.23% effective January 20, 2021, unless enjoined.  The

imposition of furloughs will impair a valid and existing contract between

the State of Hawai'i and the faculty, which is in force at present and

through June 30, 2021.

Plaintiff alleges as follows:

## **JURISDICTION**

1.      This case is brought pursuant to 42 U.S.C. § 1983, alleging a

violation of Article I, Section 10, of the Constitution of the United States.

2.      Jurisdiction exists in this Court pursuant to 28 U.S.C. §§ 1331

and 1346.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391.

3.      Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201-2202.

4.      Injunctive relief is sought pursuant to 42 U.S.C. § 1983 and Rule

65 of the Federal Rules of Civil Procedure.

5.      Plaintiff has standing to bring this complaint.

6.      The Eleventh Amendment to the United States Constitution

does not bar this case.

## PARTIES

7.      Plaintiff UNIVERSITY OF HAWAII PROFESSIONAL

ASSEMBLY (UHPA) is a labor organization and the exclusive

representative, as defined in § 89-2, Hawaiʻi Revised Statutes (HRS), of

Bargaining Unit 7, consisting of faculty of the University of Hawaiʻi.

Pursuant to Chapter 89, HRS, the UHPA is duly authorized to collectively

negotiate for, contract for, and represent university faculty, and has done so

continuously since the 1970's.  UHPA brings this action as a signatory to a

collective bargaining agreement, and in its capacity as the exclusive

representative of university faculty.

8.      Defendant DAVID Y. IGE is the Governor of the State of

Hawaiʻi.  In addition to other powers granted to a governor pursuant to the

Hawaiʻi Constitution and statutes, Defendant IGE is empowered by §

89-6(b), HRS, to direct and manage collective bargaining negotiations on

behalf of the State of Hawaiʻi, with the UHPA.  Defendant IGE is sued in

his official capacity.

9.     Defendant CURT OTAGURO is the Comptroller of the State of

Hawaiʻi and serves as the director of the Department of Accounting and-

General Services.  As such, he is Defendant IGE's subordinate.  The

Department of Accounting and General Services (DAGS), State of Hawaiʻi,

is charged with administration of the payroll for all employees of the State

of Hawaiʻi.  Defendant OTAGURO is responsible for the issuance of pay to

all persons on the State payroll, including Bargaining Unit 7 members.

Defendant OTAGURO is sued in his official capacity.

10.     Defendant DAVID LASSNER is the President of the University

of Hawaiʻi.  Pursuant to statutory authority and delegated authority from

the Board of Regents of the University of Hawaiʻi, Defendant LASSNER

has administrative control of the University of Hawaiʻi system.  Defendant

LASSNER is sued in his official capacity.

## FACTUAL BACKGROUND

### Collective Bargaining Agreement Duly Negotiated and In Force

11.     Public employees of the State of Hawaiʻi, including the faculty of the University of Hawaiʻi, are legally authorized to bargain collectively over wages, hours, and some terms and conditions of employment. Hawaiʻi Constitution, Art. XIII, Sec. 2, and HRS, Ch. 89.

12.     For purposes of collective bargaining, University of Hawaiʻi faculty are organized by Hawaiʻi law into a bargaining unit.  The faculty bargaining unit is designated Bargaining Unit 7.  HRS § 89-6.

13.     Bargaining Unit 7 selected the UHPA as its exclusive representative in the 1970's, and UHPA has served in that capacity continuously, to date.  Hawai`i Labor Relations Board Dec. No. 53.

14.     An exclusive representative has the sole authority to negotiate, on behalf of its bargaining unit, with the State governmental interests that employ them.  HRS §§ 89-2, -8.

15.     For purposes of collective bargaining with Bargaining Unit 7, the State governmental interests (the Public Employer) have been represented by a bargaining team.

16.     The Public Employer's bargaining team at all times relevant to this complaint has been formally composed of the Governor, the University of Hawaiʻi Board of Regents, and the President of the University of Hawaiʻi.  For the purpose of negotiating a collective bargaining agreement, the Governor has three votes, the Board of Regents has two votes, and the University President has one vote.  The Public Employer acts by a majority. HRS § 89-2, -6(d)(4).  In practice, negotiations may be conducted by designees.

17.     The UHPA and the Public Employer's team negotiated a proposed 2017-2021 Agreement.

18.     Bargaining Unit 7 ratified the proposed 2017-2021 Agreement, pursuant to law.

19.     Defendant IGE duly reported the tentative Agreement to the legislature and duly pursued appropriations to support it, which were timely enacted by the legislature and signed by him into law.

20.     Defendant IGE and Defendant LASSNER both signed the 2017-2021 Agreement.

21.     The 2017-2021 Agreement was effective as of July 1, 2017, and is in effect to and including June 30, 2021.

22.     The 2017-2021 Agreement has been in effect at all times germane to this complaint.

**One Mid-term Amendment**

23.     Since its effective date, and pursuant to a contractual provision authorizing mid-term bargaining over salary enhancements, the collective bargaining parties have negotiated a single amendment to the 2017-2021 Agreement, which provided a 1.2% salary enhancement for faculty effective January 2, 2020, and another 1.2% enhancement effective January 1, 2021.  This amendment neither pertained to nor authorized furloughs.

**Provisions of the 2017-2021 Collective Bargaining Agreement**

24.     The 2017-2021 Agreement contains provisions governing faculty salary, duty period, and leaves of absence, paid and unpaid, that may occur during the duty period.

25.     The 2017-2021 Agreement does <u>not</u> contain any provision entitling the Public Employer to impose furloughs.

26.     The 2017-2021 Agreement does <u>not</u> contain any provision entitling the Public Employer to unilaterally reduce faculty salaries.

27.     The 2017-2021 Agreement does <u>not</u> contain any provision entitling the Public Employer to unilaterally impose non-working leave days for the sake of reducing salary outlay.

28.     The 2017-2021 Agreement <u>does</u> contain a provision entitling the Employer to "retrench" (permanently lay off, or terminate) employees, due, e.g., to fiscal exigency, pursuant to stated procedures.

29.     A retrenchment provision has been in the current Agreement and its predecessors since 1977, and is currently Article XVI thereof.

**Bargaining Unit 7 (UH Faculty) Employees and Their Pay**

30.     The salary due to each faculty member is generally the initial salary of the faculty member, established by the faculty member's letter of hire, as modified thereafter by sequential collective bargaining agreements, up through the 2017-2021 Agreement.

31.     Faculty salaries may also be increased, in individual cases, such as by merit adjustments, overload pay, or summer salaries, applicable to an individual, but all pursuant to the collective bargaining agreement.

32.     The salary for each faculty member is computed and tracked at the University, and announced to the faculty member using a University "Payroll Notification Form" (PNF).  Faculty receive an electronic copy of any PNF applicable to them, for example, when there is a change in their salary.

33.     Payroll information, as reflected in the PNFs, is relayed by the University to State personnel, who operate under direction of Defendant

OTAGURO.  State personnel then execute payroll disbursements, typically by electronic deposit.

34.    Faculty receive their annual salary in 24 semimonthly and equal payments; this is so whether they are employed on a nine-month academic calendar duty period, as most are, or an eleven-month duty period.

35.    The payroll periods for faculty are from the 1st to the 15th day of the month, and from the 16th to the last day of the month.

36.    Faculty are paid on the 20th for the first payroll period and on the fifth of the next month, for the second payroll period.

**Actions of the Defendants**

37.    As part of his plan to deal with revenue shortfalls occasioned by the COVID-19 pandemic, Defendant IGE has ordered that faculty salaries be reduced 9.23% beginning with the first payroll period in January, 2021; i.e., as of January 1, 2021.

38.    Defendant OTAGURO has implemented Defendant IGE's order by causing the payroll processes of the State to schedule a reduction in

faculty salary of 9.23%, beginning with the payment to be issued to faculty on January 20, 2021.

39.     Defendant IGE has instructed the University to impose non-paid leave days proportionate to the 9.23% reduction, to be scheduled in the University's discretion.

40.     Defendant LASSNER, in order to fulfill Defendant IGE's instructions, has ordered that non-paid leave days be imposed upon faculty, to be scheduled according to a plan devised by his administration.

41.     In confirmation of the 9.23% upcoming salary reduction, faculty have received PNFs to that effect.

42.     In confirmation of the non-paid leave days to be imposed upon faculty, UHPA has received Defendant LASSNER's draft leave plan.

43.     In confirmation of both the 9.23% upcoming salary reduction and the non-paid leave days to be imposed, the Public Employer's bargaining team has met with UHPA to discuss and explain these actions.

**No Agreement to Amend; Public Employer Impairs Contract**

44.     In a variety of meetings and communications with UHPA in 2020, the Public Employer has proposed that the 2017-2021 Agreement be amended to permit furloughs, consisting of a 9.23% pay cut and proportionate involuntary unpaid leave days.

45.     UHPA has not agreed to amend the 2017-2021 Agreement to permit the imposition of 9.23% pay cuts, or any other pay cuts, or any involuntary unpaid leave days, whether denominated "furloughs" or anything else.

46.     UHPA has insisted that the Public Employer abide by and honor the 2017-2021 Agreement for its duration; i.e., through June 30, 2021.

47.     UHPA has directed the Public Employer's attention to the Retrenchment provision in the 2017-2021 Agreement, noting that it provides a contractual pathway to reduce expenditures in the event of fiscal exigency declared by the University's Board of Regents.

48.     The Public Employer has rejected and refused to abide by contractual processes to reduce expenditures, and asserts that if the UHPA will not agree to amend the 2017-2021 Agreement to permit furloughs, Defendant IGE will act in derogation of the 2017-2021 Agreement by unilaterally imposing them pursuant to legal authority.

49.     This unilateral imposition of furloughs is in process now, initiated by Defendant IGE, with the collaboration of Defendant OTAGURO and Defendant LASSNER.

**Public Employer's Purported Justification for Impairment of Contract**

50.     Defendant IGE contends that his furlough plan is, in policy terms, a superior method of reducing expenditures, because, among other things, it will provide him with more flexibility and choice than methods he contracted for in the 2017-2021 Agreement.  He would be able, for example, to directly and immediately increase, decrease, suspend, or reinstate furloughs, inclusive of pay cuts and involuntary unpaid leaves, as he may see fit, from time to time, for the indefinite future, in his sole

discretion, and at his sole initiative; all of which he counts as policy advantages.  He contends it would be more compassionate, and less complicated, than laying off personnel.

51.    Defendant IGE contends that his imposition of furloughs is legal, pursuant to proclamations he issued himself.

52.    According to Ch. 127A, HRS, a Governor's emergency proclamation has the force of law, equivalent to any law conventionally enacted by the legislature and signed into law by the Governor; notwithstanding that such an emergency proclamation is made solely by the Governor.

53.    In seventeen consecutive proclamations issued pursuant to Ch. 127A, HRS, since March 2020, Defendant IGE has proclaimed that an emergency existed due to the COVID-19 pandemic, and proclaimed the suspension, *inter alia*, of Chapter 89, HRS.

54.    Defendant IGE has renewed, supplemented, or supplanted his proclamations from time to time, but has maintained the purported suspension of Chapter 89, HRS, throughout.

## Existence of Actual Controversy

55.    Plaintiff contends that the actions of Defendants to impose furloughs violate constitutional law, whereas Defendants deny that claim.

56.    By reason of the facts set forth above, an actual controversy has arisen between Plaintiff and Defendants.

## Court's Ability to Effect Relief

57.    If so ordered by the Court, Defendants IGE, OTAGURO, and LASSNER, in discharge of their authority, would be able to effectively stay or reverse the imposition of pay cuts and mandatory unpaid leave days, which together compose the furloughs complained of herein.

**COUNT I:  GOVERNOR'S IMPOSITION OF FURLOUGHS**
**FOLLOWING PROCLAMATION OF NEW LAW,**
**UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT**

58.     Paragraphs 1 through 57 are restated.

59.     Defendant IGE has proclaimed a new law on behalf of the State, including suspension of Ch. 89, HRS, and relies on it to impair a valid, binding, and extant contract in force between the UHPA and the State of Hawaii, i.e., the 2017-2021 Agreement, to the State's fiscal advantage.

60.     Defendants IGE, OTAGURO, and LASSNER are acting in concert under color of state law.

61.     Defendants are proceeding with implementation of furloughs, mandatory unpaid leave days, and pay cuts without justification sufficient to overcome strong constitutional policy in favor of maintaining vitality of contracts, especially where a state purports to affect its own contracts.

62.     Defendants are proceeding with the implementation of furloughs without demonstrated due diligence and consideration of other policy alternatives; indeed, Defendants are ignoring the precise mechanism

provided in the collective bargaining agreement to deal with fiscal exigency.

63.    Defendants are not free to manipulate contracts, and laws affecting contracts, as just another policy alternative.

64.    Defendants IGE, OTAGURO, and LASSNER are violating the United States Constitution, Article I, Section 10 (Contract Clause).

65.    To the extent that Hawaiʻi law allows a governor, without participation of the legislature, to abrogate or suspend old statutory law and declare new law of equivalent force, such unilateral lawmaking by a governor is indistinguishable for purposes of Article I, Section 10 analysis, from the enactment of new legislatively-generated law, and is subject to the same stricter scrutiny.

66.    This court has previously found Hawai`i and its governor to be in violation of Article I, Section 10, for impairing UHPA's collective bargaining agreement by enactment of a law to change it, under conditions of fiscal difficulty.  See, University of Hawaii Prof. Asm. v. Cayetano, 16 F.

Supp. 2d 1242 (1998) (granting preliminary injunction against State of Hawaiʻi's violation of collective bargaining agreement), *aff'd* University of Hawaii Prof. Asm. v. Cayetano, 183 F.3d 1096 (9th Cir. 1999).

67.    A declaration from this Court is therefore necessary to the effect that implementation of furloughs will violate Plaintiff's constitutional rights.

68.    Unless Defendants are preliminarily and permanently enjoined from implementation of furloughs, mandatory unpaid leave days, and pay cuts for the duration of the 2017-2021 Agreement, Plaintiff and the Bargaining Unit 7 faculty members will be irreparably injured.

**COUNT II:  GOVERNOR'S IMPOSITION OF FURLOUGHS, UNDER ASSERTED EXECUTIVE POWER, UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT**

69.    Paragraphs 1 through 68 are restated.

70.    If Defendant IGE does not predicate his purported authority to impose furloughs on his own proclamations issued pursuant to Ch. 127A,

HRS, but instead on some conception of inherent executive authority, that purported inherent executive authority is subject to traditional Article I, Section 10 analysis.

71.    Inherent executive authority does not override Article I, Section 10, or it would be available in every Contract Clause case.

72.    Defendants IGE, OTAGURO, and LASSNER are acting in concert under color of state law.

73.    Defendants are proceeding with implementation of furloughs without justification sufficient to overcome strong constitutional policy in favor of maintaining vitality of contracts, especially where a state purports to affect its own contracts.

74.    Defendants are proceeding with the implementation of furloughs without demonstrated due diligence and consideration of other policy alternatives; indeed, Defendants are ignoring the precise mechanism provided in the collective bargaining agreement to deal with fiscal exigency.

75.    Defendants are not free to manipulate contracts, and laws affecting contracts, as just another policy alternative.

76.    Defendants IGE, OTAGURO, and LASSNER are violating the United States Constitution, Article I, Section 10 (Contract Clause).

**COUNT III:  GOVERNOR'S IMPOSITION OF FURLOUGHS, OUTSIDE STATUTORY AUTHORITY, UNCONSTITUTIONAL IMPAIRMENT OF EXISTING CONTRACT**

77.    Paragraphs 1 through 76 are restated.

78.    Defendant IGE has proclaimed that Ch. 89, HRS (public sector collective bargaining) has been suspended, as above.

79.    Defendant IGE's proclamations do not explicitly purport to suspend the 2017-2021 Agreement.

80.    To the extent that Ch. 89's contractual enforcement procedures are suspended, recourse to this Court is that much more important.

81.    However, even if, *arguendo*, Defendant IGE has full and proper authority under Hawai'i law to suspend Chapter 89, HRS, in its entirety, suspension of Chapter 89 could not constitute a basis to overturn an extant

collective bargaining agreement, duly entered between the Public Employer and the UHPA.

82.    Suspension of Chapter 89 cannot suspend United States Constitutional protection for contracts.

83.    Even if Defendants IGE, OTAGURO, and LASSNER are exceeding the strict bounds of their state statutory authority, they are nonetheless acting in concert under color of state law.

84.    Defendants are proceeding with implementation of furloughs without justification sufficient to overcome strong constitutional policy in favor of maintaining vitality of contracts, especially where a state purports to affect its own contracts.

85.    Defendants are proceeding with the implementation of furloughs without demonstrated due diligence and consideration of other policy alternatives; indeed, Defendants are ignoring the precise mechanism provided in the collective bargaining agreement to deal with fiscal exigency.

86.    Defendants are not free to manipulate contracts, and laws affecting contracts, as just another policy alternative.

87.    Defendants IGE, OTAGURO, and LASSNER are violating the United States Constitution, Article I, Section 10 (Contract Clause).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    That this Court declare that a present controversy exists, and that the Governor's imposition of furloughs, mandatory unpaid leave days, and pay cuts, as applied to Plaintiff's Bargaining Unit 7 members, is unconstitutional under Article I, Section 10 of the United States Constitution;

2.    That this Court enter preliminary and permanent injunctions addressed and issued to Defendants Governor IGE, Comptroller OTAGURO, and President LASSNER barring the implementation of furloughs, mandatory unpaid leave days, and/or pay cuts for the duration of the collective bargaining agreement;

3.     That attorneys' fees and costs be awarded to Plaintiff under 42

U.S.C. § 1988, or other applicable law; and

4.     That other reasonable relief as may be just and equitable be

provided.

DATED:  Honolulu, Hawaiʻi, <u>December 23, 2020</u>.


GILL, ZUKERAN & SGAN
T. ANTHONY GILL
WADE C. ZUKERAN
DAVID A. SGAN


<u>/s/ T. Anthony Gill</u>
Attorneys for Plaintiff UHPA